George A. Adam v. Commissioner
Adam v. Commissioner
Docket No. 1720.
United States Tax Court
1944 Tax Ct. Memo LEXIS 193; 3 T.C.M. (CCH) 649; T.C.M. (RIA) 44220; June 28, 1944
*193 John W. Drye, Jr., Esq., 70 Broadway, New York City and William H. Harrar, Esq., for the petitioner. F. S. Gettle, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of a deficiency of $30,320.11 in income tax for 1940. The issue is whether disposition of an interest in a note resulted in a deduction as a capital loss or as a bad debt. The stipulation of facts is incorporated herein by reference as part of our findings of fact. Material parts thereof will be included with findings of fact made from oral and documentary evidence. Findings of Fact The petitioner, a resident of Killingworth, Connecticut, filed his income tax return for 1940 with the collector for the district of Connecticut. Petitioner was a member of the partnership of Parker, Wilder & Co., hereinafter referred to as the "partnership" which acted as factors for various woolen mills, including the Cocheco Woolen Manufacturing Co., a New Hampshire corporation, hereinafter referred to as "Cocheco," 1125 shares of whose 1,500 shares of outstanding stock were held by its treasurer and a director, Fulton Rindge. Petitioner did not own any *194 of Cocheco's stock in 1940. On November 25, 1925, Cocheco gave its interest-bearing demand promissory note in the amount of $385,257.21 to the partnership in settlement of an open account for advances. The note was held by E. Barton Chapin, as agent for petitioner, William D. Judson, a special partner of the partnership, and estates of three decedents, owners of proportionate interests in the note. The proportionate interests owned by petitioner and Judson in the note were 24 and 21 per cent, respectively. On July 8, 1940, the partnership notified Cocheco that it would not make any further advances to it, on account of which Cocheco ceased operations on July 29, 1940. On August 8, 1940, petitioner and William D. Judson demanded immediate payment of the note, then in the principal amount of $384,757.21. At a meeting of the stockholders of Cocheco on August 21, 1940. resolutions were adopted to immediately liquidate the corporation, to sell the business as a going concern at auction, September 3, 1940, and authorizing the corporation's treasurer to acquire the note prior to August 27, 1940, for 25 per cent of the balance due thereon, the note to "be cancelled upon the payment of *195 said 25 per cent and surrendered to the treasurer of the Cocheco Woolen Manufacturing Co." An offer made by Cocheco to settle its liability under the note by payment of 25 per cent of its face amount was accepted by four of the owners of proportionate interests and rejected by the remaining owner, The New England Trust Co., one of the executors and trustees under the will of S. Parker Bremer. On August 28, 1940, after petitioner conferred with it, the New England Trust Co. agreed to settle its interest in the note for one-third of its face amount, plus the net quick assets of Cocheco, the amount thereof to be determined by an independent accounting firm. Subsequently on the same day, petitioner informed Rindge of the offer of the New England Trust Co., and that the partnership would advance him funds with which to acquire the note and otherwise finance the transaction, provided he would turn it over to Cocheco for cancellation. The partnership would not have agreed to advance the funds to acquire the note without an understanding with Rindge that upon receipt of the note he would deliver it to Concheco for cancellation. The proposed plan for liquidating the note was accepted by Rindge, *196 and on August 29, 1940, he advised Chapin of his willingness to pay for the note, $128,252.40, an amount equal to one-third of its face amount, and an amount equal to the net quick assets of Cocheco. Rindge discussed the matter with other members of the board of directors of Cocheco, during which he informed them of his intention to acquire the note personally and then immediately cancel the note and turn it over to the corporation. At a meeting held on September 4, 1940, the stockholders of Cocheco rescinded the resolutions adopted by it at the meeting held August 21, 1940, and affirmed the action of the corporation's president in resuming operations of its mill as of September 3, 1940. All of the holders of interests in the note accepted the offer of Rindge and on September 9, 1940, he transmitted to Chapin his personal check for $128,252.40, representing one-third of the principal amount of the note. The net quick assets of Cocheco were determined to be $34,150.84. The personal check of Rindge for that amount was paid to Chapin on October 24, 1940. The money used by Rindge to acquire the note was supplied by the partnership for that purpose, $128,252.40 on September 5, 1940, *197 and $34,150.84 on October 2, 1940. The note, endorsed by Chapin to the order of Rindge, was delivered to Rindge on or about October 24, 1940, with an instrument assigning the note to Rindge without recourse. Thereafter, Rindge canceled the note and immediately delivered it to Cocheco by depositing the note in the corporation's safe. On October 25, 1940, Cocheco reimbursed Rindge for the aggregate of $162,403.24 he had paid to Chapin. On the same day Rindge gave the partnership his personal check for $162,403.24, in payment of the amounts advanced to him to acquire the note from Chapin; also a check for $1,199.68 for interest on the loan. Rindge was subsequently reimbursed by Cocheco for the interest payment. The partnership loaned Cocheco $165,000 on October 25, 1940, with which to make the payments of $162,403.24 and $1,199.68 to Rindge. The loan has been paid. On October 25, 1940, Cocheco made the following entry in its books under the direction of a certified public accountant; Notes Payable
$222,353.97
Capital Surplus
$222,353.97
Notes Payable has this
day been liquidated
for $162,403.24.
Thereafter the note was not listed as a liability in statements made by *198 Cocheco to the partnership. The petitioner received $38,607.18 on October 24, 1940, from E. Barton Chapin, for his interest in the note. At a meeting of directors of Cocheco on November 24, 1940, it was voted: "To authorize the purchase of the note held by Fulton Rindge, dated November 25, 1925, for $162,403.24." At the annual meeting of the stockholders of Cocheco held on January 9, 1941, the stockholders voted: "To ratify the action of the officers in retiring the notes payable and the consequent contribution to capital by Fulton Rindge as the holder of a substantial portion of the capital stock." The form of the resolutions was suggested by counsel for Cocheco. The transaction involved herein was a liquidation by Cocheco, acting through Rindge, of its liability under the note for a fraction of the amount due the owner thereof and the resulting loss to petitioner is deductible as a bad debt. Opinion In his return for 1940, petitioner claimed a bad debt deduction of $53,854.55, resulting from the liquidation of the note. In his determination of the deficiency respondent held that the amount represented loss from the sale or exchange of a long-term capital asset and, accordingly *199 limited the deduction to $26,927.28, or one-half of the amount of the loss sustained, under the provisions of section 117 of the I.R.C. The issue is limited to the question of whether the loss is deductible in full as a bad debt or recognizable only to the extent of one-half because of having resulted from the sale or exchange of a long-term capital asset. The respondent's contention is that there was a sale of the note to Fulton Rindge personally, and petitioner argues that the owners of the note compromised their claims against Cocheco through Rindge acting as agent for the corporation. There is evidence tending to support the respondent's determination. Negotiations for the acquisition of the note were conducted by Rindge; funds to acquire the note were supplied Rindge by the partnership; personal checks of Rindge were used to take up the note in the hands of Chapin, agent for the owners and pay the advance made by the partnership, and after the delivery of the note to Cocheco, the corporation paid Rindge amounts necessary to repay the advances made to him by the partnership to acquire the note for Chapin. Without viewing the question as a single transaction, the facts indicate *200 a sale to Rindge and then a transfer of the note to Cocheco for the same price. We are of the opinion, however, that the assignment to Rindge and transfer by him to Cocheco were only steps in a single transaction that accomplished a settlement with Cocheco of its liability under the note. Negotiations for settlement of the liability for less than the full amount were instituted by Cocheco, pursuant to a resolution adopted by its stockholders after the receipt of a demand for payment. The offer of settlement made by Cocheco was rejected. A counter offer, made by the owner of an interest in the note, was accepted by Rindge, and after all of the other holders of interests in the note had agreed to the counter proposal, settlement was made on the terms thereof. The funds advanced to Rindge by the partnership to conclude the settlement on the new terms were made with the distinct understanding that the note would be promptly turned over to Cocheco, and on the day of its receipt by Rindge it was so transferred and eliminated as a liability on the books of Cocheco. When these things had been done, Cocheco had the canceled note and was indebted to the partnership for an advance of funds *201 to acquire it from Rindge. Thus, it was never intended that the note should be held by Rindge as a claim against Cocheco; rather that it should be promptly delivered to the latter for cancellation on its books as a liability, after reimbursing Rindge to pay the advance made by the partnership. The transaction was financed by the partnership with this understanding. Rindge had ample authority to conclude the transaction in accordance with the plan adopted, notwithstanding the resolution to compromise the demand on the basis of a payment of 25 per cent of the face amount of the balance due on the note. He discussed the method of settlement informally with other members of the board of directors of Cocheco, but their reaction to the proposal does not appear in the evidence. In any event, Rindge, as owner of more than two-thirds of the outstanding stock of Cocheco, controlled the corporation and was in a position to adopt and carry out any plan of settlement without consulting the other directors. The effect of what he did was to acquire the note for the account of the corporation, which in the end supplied the funds for that purpose and derived the benefit of the settlement. The plan *202 adopted to consummate the deal contemplated that Rindge should act as intermediary, and the part he played was not more than that. It was never intended that he should derive any direct financial benefit from the transaction. The proposal made by the New England Trust Co. to settle for one-third of the unpaid face amount of the note and the amount of the net quick assets of Cocheco, rather than for a lump sum, after rejecting the offer of Cocheco to liquidate the note by payment of 25 per cent of its unpaid principal amount, has more of the characteristics of a compromise settlement of indebtedness than a purchase and sale of the note. Respondent points to the resolution adopted by the directors on November 24, 1940, and the resolution passed by the stockholders on January 9, 1941, as indicating that Cocheco was dealing with Rindge as an individual rather than as an agent, and that he made a capital contribution to Cocheco. It is nothing more than an indication. The resolutions as adopted were drafted by counsel for Cocheco on the on the basis of facts not disclosed in evidence here. The corporate resolutions are not conclusive. The question here must be decided from all the evidence. *203 Gossett v. Commissioner, 59 Fed. (2d) 365; Levey v. Helvering, 68 Fed. (2d) 401. The amount of $53,854.55 is deductible as a bad debt. Accordingly, Decision will be entered under Rule 50.